## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CIGNA CORP | : | CIVIL ACTION |
| SECURITIES LITIGATION | : | NO. 02-8088 |
| | : | |

### MEMORANDUM

**Baylson, J.**                                                   **December 23, 2005**

This is an action alleging securities fraud brought against the CIGNA Corporation

("CIGNA"), pursuant to the securities laws of the United States and Private Securities Litigation

Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  Currently before the Court are (1) Plaintiff's

Motion to Amend the Complaint (Docket No. 86), and (2) Defendants' Cross-Motion to Dismiss

(Docket No. 82).  For the reasons discussed infra, Plaintiff's Motion to Amend will be granted in

part and denied in part, and Defendants' Motion to Dismiss will be denied without prejudice.

### I.       Background

The original PSLRA complaints in this matter were filed beginning on October 25, 2002,

after CIGNA's stock price dropped following its announcement of revised earnings projections

on October 24, 2002.  The case was originally assigned to Judge Clarence Newcomer, who died

earlier this year.  By order dated May 15, 2003, Judge Newcomer consolidated the actions,

appointed Co-Lead Plaintiffs, and required the filing of a single consolidated amended class

action complaint (the "Pending Complaint").

On July 3, 2003, Plaintiff filed the Pending Complaint, which centered around allegations

concerning CIGNA's attempt, beginning in 1999, to upgrade the company's technology to

improve its competitive position vis a vis rivals who were offering customer-oriented products and processes built on next-generation web-enhanced computer systems.  CIGNA's major, billion-dollar technology overhaul was entitled "Transformation," and it was targeted for completion in 2003.  The underpinning of Lead Plaintiff Pennsylvania Employee Retirement System's ("SERS") claims is allegations that CIGNA fundamentally mishandled the Transformation project due to deficient planning, scheduling delays, cost overruns, implementation of inadequate and malfunctioning technologies, and poor project management. At the same time that Transformation was causing CIGNA serious difficulties, SERS alleges, CIGNA deliberately misrepresented the progress, timing, success, and cost of Transformation, as well as related earnings estimates, to the public, causing an artificial inflation of CIGNA's stock price.  SERS maintains that when CIGNA finally revealed the problems related to Transformation to the public in 2002, CIGNA's share price plummeted, to the detriment of shareholders.

Defendants moved to dismiss the case on August 27, 2003.  In Orders dated January 30, 2004 and November 15, 2004, Judge Newcomer dismissed certain claims, including all 2001 claims relating to Transformation, and dismissed defendant Andrea Anania from the case, but denied Defendants' motion with respect to other claims, including 2002 claims relating to Transformation.  More specifically, in the January 30, 2004, Order, Judge Newcomer dismissed the following paragraphs for the reasons indicated:  § 164 (failure to plead falsity); § 172 (mere puffery); § 181 (mere puffery; failure to plead falsity and scienter); § 196 (mere puffery; failure

to plead falsity and scienter); and § 201 (mere puffery; failure to plead falsity and scienter).[1]  In the November 15, 2004, Order, Judge Newcomer dismissed § 178 for failure to plead scienter, resulting in the dismissal of defendant Anania from the case.

On June 2, 2005, Co-Lead Plaintiff Peter Szanto filed a motion to withdraw from the case.  The Court granted that motion on August 15, 2004.  The single Lead Plaintiff is now SERS.  Judge Newcomer's Pretrial Scheduling Order, dated May 25, 2005, called for the completion of all fact discovery by January 17, 2006, with the case to be ready for trial by the summer of 2006.  As a result of the rulings on the pending motions, a new Pretrial Scheduling Order will be entered after a conference with counsel.

## II.    The Pending Motions

On July 29, 2005, remaining Lead Plaintiff SERS filed a Motion to Amend, proposing to file an amended consolidated Complaint (the "Proposed Amended Complaint").  On August 12, 2005, Defendants' filed the Cross-Motion to Dismiss all of SERS' remaining claims for lack of economic loss and loss causation, based on the recent United States Supreme Court decision in Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627 (2005).

The Court held oral argument on the two pending motions on November 16, 2005.  At argument, SERS maintained that the proposed amendments are based on the fruits of document discovery, completed in June of 2005, which, SERS urged, provide evidence (1) supporting the expansion of Plaintiff's  2002 claims concerning Transformation; (2) supporting the addition of claims concerning representations of financial estimates; (3) supporting the assertion of facts

---

[1] In the January 30, 2004 Order, Judge Newcomer also dismissed all claims relating to (1) the use of estimated health care membership numbers, and (2) guaranteed minimum death benefit reserves.  Plaintiff has not sought to renew these claims.

concerning falsity and scienter that would cure the defects that led the Court do dismiss the 2001

Transformation-related claims, and thereby revive those claims; and (4) supplement its assertions

of economic loss and loss causation.  In response, Defendants contended that (1) SERS' motion

should be denied due to a continuing failure to adequately plead securities fraud (i.e., alleging

new claims and re-alleging dismissed claims regarding non-actionable statements, and failing to

plead particularized facts that create the required strong inference of scienter), and (2) pursuant to

Dura Pharmaceuticals, SERS' remaining claims must be dismissed for failure (and inability) to

plead economic loss and loss causation.

Following argument, the Court issued an Order on November 23, 2005 in which the

Court: (1) allowed the Pending Complaint to be amended to add paragraphs 247-250, which

assert allegations under the category of "loss causation;" (2) agreed to consider the pending

Defendants' Motion to Dismiss as constituting a motion under F. R. Civ. P. 12(b)(6) to dismiss

paragraphs 247-250; (3) allowed the parties to file additional briefing on the issue of loss

causation; and (4) took all other issues under advisement.

The Court now resolves outstanding issues involved in the two pending motions.

## III.    Relevant Law

### 1.    Amendments and PSLRA Pleading Requirements

The decision to permit an amendment is squarely within the Court's discretion.  Air

Prods. & Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 332 (E.D. Pa. 2003).

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely

given" by the Court "when justice so requires."  F. R. Civ. P. 15(a).  Generally speaking, "undue

prejudice to the non-moving party is the touchstone for the denial of an amendment."  Heyl &

Patterson Int'l, Inc. v. F.D. Rich Housing, Inc., 663 F.2d 419, 425 (3d Cir. 1981).

However, the PSLRA raises additional concerns regarding proposed amendments. Specifically, in a PSLRA action, the Third Circuit has instructed that on a motion to amend, the proposed new claims must "satisfy the stringent pleading requirements of the PSLRA;" if they do not, "leave to amend would be futile" and the proposed amended claims should be disallowed. See In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 154 (3d Cir. 2004) (affirming denial of motion to amend a PSLRA consolidated complaint).  In so doing, the Third Circuit has stressed "the PSLRA's unique impact of narrowing application of this standard in securities fraud cases." CALPERS v. Chubb Corp., 394 F.3d 126, 164-65 (3d Cir. 2004) (quoting In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002)); see also GSC Partners CDO Fund v. Washington, 368 F.3d 228, 246 (3d Cir. 2004) (noting objectives of PSLRA in denying leave to amend).

The stringent pleading requirements of the PSLRA that must be considered when evaluating a proposed amendment are straightforward.  As relevant here, the strictures of the PSLRA include:

a.     Plaintiff must plead the circumstances constituting the fraud or mistake with particularity. In re Advanta Corp. Sec. Litig., 180 F.3d 525, 531 (3d Cir. 1999).  Conclusory allegations are unacceptable.  In re Milestone Scientific Sec. Litig., 103 F. Supp. 2d 425, 453 (D.N.J. 2000).

b.     Opinions, predictions, and other forward-looking statements are not actionable unless the speaker does not genuinely and reasonably believe them when they are made (i.e., has actual knowledge of falsity).  In re Advanta, 180 F.3d at 535-36; In re Donald J. Trump Sec. Litig., 7 F.3d 357, 368 (3d Cir. 1993).  A statement is forward-looking if it is a

statement containing a projection of revenues, income, earnings, per share, capital

expenditures, dividends, capital structure, or other financial items; a statement of the

plans and objectives of management for future operations; or a statement of future

economic performance.  15 U.S.C. § 78u-5(i)(1)(A), (B) and ©.  The PSLRA provides a

safe harbor for forward-looking statements which are identified as such and are

accompanied by a meaningful cautionary statement dealing with important factors which

could result in actual results differing materially from those statements presented.  See 15

U.S.C. § 78u-5(c)(1)(A).  However, even in the absence of sufficient cautionary language,

the safe harbor can prevent liability for forward looking statements from attaching if

plaintiffs fail to prove individual defendants acted with actual knowledge of the falsity.

See 15 U.S.C. § 77z-2(c)(1)(B)(I, ii).

Projections of earnings estimates generally fall within the above-described

definition of forward-looking statements.  In re Advanta, 180 F.3d at 536.  Although the

Third Circuit has not adopted a rule that earnings estimates based on past performance are

per se reasonable, see Weiner v. Quaker Oats Co., 129 F.3d 310, 320 (3d Cir. 1997),

Circuit law generally requires more than a showing that a predicted event did not occur in

order to sustain a claim of fraud.  In re Advanta, 180 F.3d at 536-37.  Even as stated in a

pre-PSLRA case, this is because "[t]he existing regulatory structure is aimed at

encouraging companies to make and disclose internal forecasts by protecting them from

liability for disclosing internal forecasts that, although reasonable when made, turn out to

be wrong in hindsight. . . .  Companies are not obligated either to produce or disclose

internal forecasts, and if they do, they are protected from liability, except to the extent

-6-

that the forecasts were unreasonable when made." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1432 (3d Cir. 1997).

Judge Dalzell recently detailed this analytical framework concerning forward-looking financial performance forecasts in In re ATI Technologies, Inc. Securities Litigation, 216 F. Supp. 2d 418, 440-43 (E.D. Pa. 2002). In ATI Technologies, the Court noted that Plaintiff may be able to set forth "particularized facts about circumstances existing at the time Defendants gave optimistic projections that threatened to have a negative impact on profit margins and sales," and that such facts may indicate that Defendants' "forecasts about revenue, sales, and profit margins remaining on track were unreasonable when made." Id. at 441. However, the Court recognized that, because they are nonetheless forward-looking, such "unreasonable statements" are successfully neutralized by either (1) Defendants' showing that the projections were accompanied by appropriate cautionary language (triggering the "bespeaks caution" doctrine), or (2) Plaintiff's failure to "show that those who made them or approved of them had 'actual knowledge' of their falsity." Id. at 442-32 (citing EP Medsystems, Inc. v. Echocath, Inc., 235 F.3d 865, 872-875 (3d Cir. 2000); 15 U.S.C. § 78u-5(c)(1)(B)).

Existing law assumes that the market knows that companies have neither a specific obligation to disclose internal forecasts nor a general obligation to disclose all material information; as a result, the Third Circuit presumes that ordinary, run-of-the-mill forecasts contain no more than the implicit representation that the forecasts were made reasonably and in good faith. Id. In keeping with this, the law does not impose a duty to update forward-looking statements such as earnings estimates with all relevant material

-7-

information and/or upon changes in business strategy.  See 15 U.S.C. § 78u-5(d)

("Nothing in the section shall impose upon any person a duty to update a forward looking

statement."); In re Burlington Coat Factory, 114 F.3d at 1433 ("The voluntary disclosure

of an ordinary earnings forecast does not trigger any duty to update.").

c.       Vague and general statements of optimism constitute no more than non-actionable

puffery and are understood by reasonable investors as such.  In re Advanta, 180 F.3d at

538.

d.       The PSLRA's heightened requirements for pleading scienter requires that Plaintiff allege

facts that establish a strong inference of the requisite state of mind.  15 U.S.C. § 78u-

4(b)(2).  Plaintiff may accomplish this by alleging either "facts establishing a motive to

commit fraud and an opportunity to do so" or "facts constituting circumstantial evidence

of either reckless or conscious behavior."  In re Advanta, 180 F.3d at 530.  These facts

must be alleged with particularity and with respect to each alleged act or omission.  Id. at

535 (holding that permitting blanket assertions of motive and opportunity to serve as the

basis of liability would undermine the more rigorous pleading standard Congress has

established in the PSLRA); see also EP Medsystems, 235 F.3d at 881 (holding that it is

not enough for a plaintiff to state that defendants had no reasonable basis for making the

representation).

**2.       Pleading Economic Loss and Loss Causation**

The United States Supreme Court recently issued an opinion in Dura Pharmaceuticals,

Inc. v. Broudo, 125 S.Ct. 1627 (2005) in which the Court discussed the basic required elements

of a PSLRA action.  In Dura, the Court specifically held that those fundamental requirements

include pleading "<u>economic loss</u>, 15 U.S.C. § 78u-4(b)(4); and '<u>loss causation</u>,' <u>i.e.</u>, a causal connection between the material misrepresentation and the loss." 125 S.Ct. at 1631 (emphasis in original).

In so holding, the Court rejected the Ninth Circuit's ruling that, in a PSLRA fraud-on-the-market case (such as the case <u>sub judice</u>), plaintiffs need only establish that "the price <u>on the date of the purchase</u> was inflated because of the misrepresentation."  <u>Id</u>. at 1631 (quoting <u>Broudo v. Dura Pharmaceuticals, Inc.</u>, 339 F.3d 933, 938 (9th Cir. 2003)) (emphasis added by the Supreme Court).  The Court held that an inflated purchase price "will not itself constitute or proximately cause the relevant economic loss," and explained that "any logical link between the inflated share purchase price and any later economic loss is not invariably strong.  Shares are normally purchased with an eye toward a later sale.  But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." <u>Id</u>. at 1631.

Few Courts of Appeals have had time to incorporate the recent <u>Dura Pharmaceuticals</u> ruling into the laws of the Circuits.  Indeed, the Third Circuit only very recently acknowledged the ruling in passing in <u>In re Merck & Co. Securities Litigation</u>, 2005 U.S. App. LEXIS 27412, *39 (3d Cir. Dec. 15, 2005).

Prior to <u>Dura Pharmaceuticals</u>, the Third Circuit's standard for evaluating the pleading of economic loss and loss causation was enunciated in <u>Semerenko v. Cendant Corp.</u>, 223 F.3d 165, 185 (3d Cir. 2000).  In <u>Semerenko</u>, our Court of Appeals held that:

> [W]here the claimed loss involves the purchase of a security at a
> price that is inflated due to an alleged misrepresentation, there is a
> sufficient causal nexus between the loss and the alleged

> misrepresentation to satisfy the loss causation requirement . . .  We
> note, however, that those decisions assume that the artificial
> inflation was actually "lost" due to the alleged fraud.  Where the
> value of the security does not actually decline as a result of an
> alleged misrepresentation, it cannot be said that there is in fact an
> economic loss attributable to that misrepresentation.  In the
> absence of a correction in the market price, the cost of the alleged
> misrepresentation is still incorporated into the value of the security
> and may be recovered at any time simply by reselling the security
> at the inflated price. . . Because a plaintiff in an action under §
> 10(b) and Rule 10b-5 must prove that he or she suffered an actual
> economic loss, we are persuaded that an investor must also
> establish that the alleged misrepresentations proximately caused
> the decline in the security's value to satisfy the element of loss
> causation.

This Court concurs with Judge Pisano's recent conclusion, set forth in In re Royal Dutch/Shell

Transport Securities Litigation, 2005 U.S. Dist. LEXIS 32190 (Dec. 12, 2005), that Dura

Pharmaceuticals is consistent with the Third Circuit's existing precedent for pleading economic

loss and loss causation:

> As recognized by Dura, the Third Circuit had not used the "Ninth
> Circuit's 'inflated purchase price' approach to proving causation and
> loss."  Id. at 1630, 1632 n5.  In Semerenko, the Third Circuit
> recognized that prior Third Circuit precedent held that "where the
> claimed loss involves the purchase of a security at a price that is
> inflated due to an alleged misrepresentation, there is a sufficient
> causal nexus between the loss and the alleged misrepresentation to
> satisfy the loss causation requirement."  Semerenko v. Cendant
> Corp., 223 F.3d 165, 185 (3d Cir. 2000). However, the Third
> Circuit emphasized that:
>> The "artificial inflation [must] actually [be] 'lost'
>> due to the alleged fraud. Where the value of the
>> security does not actually decline as a result of an
>> alleged misrepresentation, it cannot be said that
>> there is in fact an economic loss attributable to that
>> misrepresentation. In the absence of a correction in
>> the market price, the cost of the alleged
>> misrepresentation is still incorporated into the value
>> of the security and may be recovered at any time

simply by reselling the security at the inflated price.

> Because a plaintiff in an action under § 10(b) and Rule 10b-5 must prove that he or she suffered an actual economic loss, we are persuaded that an investor must also establish that the alleged misrepresentations proximately caused the decline in the security's value to satisfy the element of loss causation.  Semerenko, 223 F.3d at 185 (citations omitted) (emphasis added).  In requiring a plaintiff to plead and prove that the alleged misrepresentations (1) "proximately caused" (2) "the decline in the security's value," Semerenko is entirely consistent with Dura's holding that "the Ninth Circuit's approach [was] inconsistent with the law's requirement that a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss."  Dura, 125 S. Ct. at 1633; Semerenko, 223 F.3d at 185. The standard for pleading economic loss and loss causation in the Third Circuit thus was not undermined by Dura.

## IV.    Discussion Regarding the Proposed Amended Complaint

### 1.    Alleged Misrepresentations on May 2, 2001

As noted above, Judge Newcomer disallowed an allegation in the Pending Complaint concerning alleged misrepresentations in May 2001.  Plaintiff has attempted to remedy this with more detailed claims based on its discovery and investigation to date.  In the Proposed Amended Complaint, beginning at paragraph 160, Plaintiff alleges that CIGNA announced its results for the first quarter of 2001:

> In a publicly accessible conference call with analysts on May 2, Defendant Hanway made false representations concerning the company's transformation initiative, asserting that it was on schedule and that CIGNA's total 2001 systems research and development costs, the preponderance of which was for transformation, would be $250 to $300 million, whereas in fact there were reports within the company from internal CIGNA documents that the transformation costs in the 2001 Operating Plan were $341 million.

The Proposed Amended Complaint attempts to include allegations of scienter that Judge Newcomer found were missing from the Pending Complaint.  The Court will review these allegations in some detail.

Initially, the Proposed Amended Complaint is vague as to what portion of the total 2001 systems research and development costs were actually for Transformation, and the allegation that these costs were "expected to be approximately $250 to $300 million" is the type of forward-looking statement as to which there is a safe harbor under the PSLRA.  See 15 U.S.C. § 78u-5(i)(1)(A), (B) and © (discussed above).  As the Court of Appeals stated in In Re Burlington Coat Factory:

> The forward looking portion of the statement here is a general, non-specific statement of optimism or hope that a trend will continue.  Claims that these kinds of vague expressions of hope by corporate managers could dupe the market have been almost uniformly rejected by the courts.

114 F.3d at 1427 (citations omitted).

The allegations concerning the May 2001 disclosures continue with claims that the publicly available statements of CIGNA were materially false and misleading, as demonstrated by "various internal CIGNA documents authored by or sent to Defendant Stewart or the Chief Financial Officer of CIGNA Health Care" (Proposed Amended Complaint ¶ 162).  These claims, set forth in the disjunctive, without stating facts showing a knowledge of falsity on the part of any named Defendant, are insufficient.

Judge Newcomer did find that there were allegations in the Pending Complaint sufficient to allege that there were undisclosed delays in the progress and status of the Transformation project, but Plaintiff is now intent on alleging that CIGNA misrepresented the costs of

Transformation in addition to the problems with delays.  Paragraphs 162-171 of the Proposed

Amended Complaint contain allegations about increased costs, but also assert that the <u>delay</u> in

Transformation was increasing the cost of Transformation.

In its attempt to sufficiently allege scienter,[2] Plaintiff alleges that Defendant Hanway's

May 2, 2001, representation that CIGNA was "right on our internal tracking, our internal time

frame" was false and misleading because he knew there were many delays due to, <u>inter</u> <u>alia</u>, a

variety of circumstances including the "critical eligibility application," which would result in

increased costs and delay in the development of other applications, and that these delays "were

highly material because they impaired the company's ability to adequately test applications."

The Proposed Amended Complaint further asserts in Paragraph 164 that these delays, which

Defendant Hanway knew about but recklessly disregarded when he made his May 2, 2001

representation, included a number of issues which Plaintiffs allege were crucial to the

Transformation project.  <u>See</u> Proposed Amended Complaint at §164(a)-(h).  Plaintiff further

---

[2]Plaintiff's allegations concerning scienter are spread throughout the Proposed Amended Complaint.  The Court has reviewed them, both in the specific places where facts are pleaded, and also at the end of the pleading, under the heading of "Scienter Allegations" beginning at Paragraph 242.  However, this approach to pleading made it difficult to "match up" allegations to specific events.  Although these allegations show that Defendants Hanway and Stewart were at various meetings, and may have reviewed certain documents, the Court is still not satisfied that the requirements of scienter have been met by the allegations made against Hanway and Stewart.  Plaintiff's allegations that Stewart and Hanway had motive to misrepresent the facts about earnings because of their own compensation arrangements have been held insufficient as a matter of law.  <u>GSC Partners</u>, <u>supra</u>.

Defendants' brief asserts that Plaintiff misrepresents financial reports about different CIGNA operational units.  At oral argument, defense counsel presented facts and contentions that the discrepancies between the estimates and the other facts presented by Plaintiff are explained by the Plaintiff's failure to understand CIGNA's accounting for Goodwill in various statements.  The Court cannot resolve this issue on the Motion to Amend, nor do the Defendants' contentions themselves necessarily negate the allegations of scienter.  Rather, the Court rules on the sufficiency of the allegations themselves.

suggests in Paragraph 166 of the Proposed Amended Complaint that when CIGNA announced on October 24, 2002, that its earnings for 2002 and for the third quarter of 2002 were sharply lower than Hanway's prior estimates, and the price of CIGNA stock declined sharply, Defendants cited "Transformation related increased technical and service costs" as causes of the company's markedly reduced earnings.

However, the Court concludes that Plaintiff has failed to show that the statements of Defendant Hanway on May 2, 2001 were anything other than forward-looking statements. The fact that Defendant Hanway may have had knowledge of operational difficulties in the Transformation project as early as May 2001 does not, under the allegations of the Proposed Amended Complaint, meet the requirements of the PSLRA for causing a dramatic reduction in stock price in October 2002. This span of almost 18 months is simply too long to allow a new theory of liability, to allow discovery to proceed to find a cause-and-effect relationship for a multi-billion dollar corporation such as CIGNA, between an announcement in May 2001 and a stock decline in October 2002. Stated differently, the Court cannot find sufficient reason to allow, at this time, these particular allegations of the Proposed Amended Complaint, even assuming, arguendo, that there was a "domino effect" from misrepresentations made in May 2001. The Court finds that Plaintiff has already alleged that delays in Transformation were known to CIGNA officers and misrepresented in statements made during calendar year 2002 – and the case will proceed as to these misrepresentations.

Plaintiff is obviously attempting to have the start of the alleged fraud run from May of 2001, as this will increase the alleged damage period dramatically from the class period which exists under Judge Newcomer's current Orders, which will start as of February 8, 2002.

-14-

Plaintiff has also attempted to show that because of the delays, Transformation costs were increasing.  Common sense suggests that delays usually increase costs.  However, the Proposed Amended Complaint is deficient in sufficient facts to show scienter as to costs.  There is no specific allegation that any defendant or high-ranking officer of CIGNA had specific knowledge, aside from whatever they may have known about delays, that the costs of Transformation were being misrepresented.

In Paragraph 161 of the Proposed Amended Complaint, Plaintiff points to Defendant Stewart's response to a question from an analyst who queried:

> Just to the nearest $50 million, I recall the range being something like 250-300 million in total systems R&D which, you know, a preponderance of it was for transformation.  Is that consistent with your thoughts on '01?

Defendant Stewart allegedly answered in the affirmative and continued:

> We haven't changed our view of that particularly those include a variety of things including e-commerce activities and things like that.  So, it's meant to be sort of broadly developmental, not just the transformation numbers.

Plaintiff's attempt to allege that this generalized answer, clearly forward-looking by its terms and intent, constitutes a misrepresentation as to costs because the 2001 operating plan for Transformation costs was $341 million, is unsuccessful.  Proposed Paragraphs 162, 164(a)-(h), and 165 are a jumbled stream of alleged facts that appear to "cherry pick" from CIGNA documents – but Plaintiff fails to establish scienter concerning the above-quoted remarks.  The best that could be said for this aspect of Plaintiff's Proposed Amended Complaint, notwithstanding that Plaintiff failed to show any scienter as to Defendant Stewart's answer quoted above (or the other statements allegedly made by Defendant Hanway), is that the

Proposed Amended Complaint is alleging the truism that delays result in an increase in costs.

Although the Court has, in some detail, related the allegations of the Proposed Amended Complaint and found that scienter is lacking now (just as Judge Newcomer found it lacking in prior, more generalized allegations), the Court also takes into account, in denying this portion of the Proposed Amended Complaint, the factors of prejudice and delay in completion of the litigation.  CIGNA has been defending this case, which includes the gathering of documents and interviews of knowledgeable witnesses, based on the original claims about the delays and problems concerning completion of Transformation.  To allow introduction of a new theory of liability concerning misstatements of costs and earnings would likely require an entirely new round of document gathering and witness interviewing with a burden and expense that the Court finds prejudicial, particularly so long after the events in question.  Balancing this burden and expense against the relatively weak allegations, which the Court has reviewed above, the Court concludes that the these proposed amendments concerning earnings and costs estimates should not be allowed.

This case was started on October 25, 2002 and focused on misrepresentations about the completion of "Transformation."  The terminal illness and untimely death of Judge Newcomer undoubtedly accounted for some delay.  Nonetheless, the fact of the matter remains that after three years, although there has been extensive document production, few depositions have been taken and completion of merits discovery is months away; there has been no ruling on the class action issue; and there is a need to bring this case to closure by placing some reasonable fence around new allegations and further discovery.

For all of these reasons, the Court declines to allow Paragraphs 160 through 168 of the

Proposed Amended Complaint concerning the statements made as of May 2, 2001.

**2.      Alleged Misrepresentations on August 1, 2001**

The Pending Complaint's allegations concerning the August 1, 2001, conference call alleged misrepresentations made by Defendant Hanway about customer reaction to Transformation (i.e., Hanway's statement that "So I would say progress to date has been good. The customer reaction to this, Charles, has been very positive"), which Judge Newcomer dismissed as non-actionable puffery.  See Pending Complaint ¶ 172.

However, the paragraphs of the Proposed Amended Complaint concerning the August 1, 2001, conference call instead focus on representations made about estimated operating earnings. Paragraph 170 asserts that when CIGNA issued a press release announcing its results for the second quarter of 2001, on August 1, 2001, it reported operating income of $262 million or $1.73 per share.  Plaintiff further asserts that, in connection with this report, Defendant Stewart made a substantially reduced estimate of the 2001 operating earnings of CIGNA's healthcare business and CIGNA's 2001 consolidated operating earnings, as a result of which the Proposed Amended Complaint alleges that there was an "immediate and dramatic decline in the market price of CIGNA stock from its close on July 31, 2001 to a closing price of the following day."  The Proposed Amended Complaint asserts that the representations as to earnings were false because CIGNA, in fact, expected operating earnings of much less than what was actually announced.  In Paragraph 171, the Proposed Amended Complaint further asserts that Stewart falsely represented that "the decline [in estimated earnings] is solely related to the medical cost pressure on HMO operations offset in part by stronger indemnity."

The only claim which could possibly come close to alleging scienter concerning the

allegedly false August 1, 2001, statements is the proposed new Paragraph 172, which reads in its

entirety as follows:

> 172.     Defendant Stewart's representation in the preceding
> paragraph as materially misleading because the reduced estimate
> was caused in part by the fact that defendant Stewart had
> previously misrepresented Transformation costs on May 2, 2001,
> and, the acceleration of Transformation spending, as stated in the
> official quarterly financial report of CIGNA HealthCare, which
> was received by defendant Stewart, was a significant cause of
> reduced HMO operating earnings and margins.

The Court ascertains several reasons against allowing this new theory of liability to

proceed.  Initially, the statements allegedly made by Stewart were clearly forward-looking

statements about earnings estimates in the future, and for this reason alone, are not actionable

under In Re Burlington Coat Factory and the PSLRA.  Secondly, Paragraph 172, quoted above, is

lacking in facts showing scienter.  The Court has already found that the alleged statements made

on May 2, 2001 should not become part of this case, and thus, the fact that the reduced earnings

estimate allegedly made on August 1, 2001, was "caused in part," (itself very vague), "by the fact

that defendant Stewart had previously misrepresented Transformation costs on May 2, 2001,"

only asserts that one non-actionable statement caused a subsequent statement – and thus, by

definition, the later statement can not itself be actionable.  Plaintiff does not explain how a

reduced earnings estimate can be "caused" by a prior misrepresentation rather than by actual facts

occurring within the company.  Perhaps Plaintiff intended to allege a "cover-up" in a

continuation of the fraud allegedly started in May 2001, but did not say so.  Furthermore, the last

clause of Paragraph 172 is murky.  Plaintiffs do not allege how a statement concerning

acceleration of Transformation spending, as set forth in the official quarterly financial report of

CIGNA HealthCare, could be actionable even if it were a significant cause of reduced HMO operating earnings and margin. There is nothing contained in these Paragraphs concerning the August 1, 2001, press release that indicates that Stewart personally knew facts which he intentionally misrepresented in these statements.

Last, the theories expressed about the August 1, 2001, statement contained in Paragraphs 169-172 of the Proposed Amended Complaint have no relationship to customer reaction, a theory set forth in the Pending Complaint and rejected by Judge Newcomer, but, rather, inject a new theory of liability into the case. This will not be permitted because, as stated above, doing so (1) will unduly complicate discovery, (2) is prejudicial to the Defendants, and (3) is likely to unduly delay trial of a case already over three years old.

For all of these reasons, the Court declines to allow the paragraphs of the Proposed Amended Complaint concerning the statements made as of August 1, 2001.

### 3.    Alleged Misrepresentations on November 2, 2001

The Pending Complaint, as well as the Proposed Amended Complaint, asserts that CIGNA's press release announcing its financial results for the third quarter of 2001, released on November 2, 2001, contained false statements actionable under the PSLRA. Judge Newcomer had dismissed the November 2001 claims for failure to plead scienter and found that they were non-actionable puffery. In Paragraphs 176-184 of the Proposed Amended Complaint, the Plaintiffs have divided their assertions into two general parts. Plaintiff first alleges that the Defendants made misrepresentations concerning the status of the Transformation project, and, second, alleges that Defendants misrepresented costs and earnings in material amounts.

### a.   Alleged Misrepresentations Concerning the Status of the Transformation Project

In Paragraph 176 of the Proposed Amended Complaint, Plaintiffs assert that shortly after the issuance of the November 2, 2001, press release, Defendants Hanway and Stewart, during a telephone conference, once again commented on Transformation by stating "first of all, we are on track with our own schedule," which itself was false because CIGNA knew there were serious technological flaws and significant delays in putting millions of its customers on new computer platforms as of January 1, 2002, as had been planned under Transformation.  The Proposed Amended Complaint cites internal memoranda, either authored by Defendant Hanway or reviewed by him, which raised numerous problems, including an assertion in one memorandum that unresolved Transformation problems would result in "a financial and customer relations nightmare."

In contrast to the allegations in the Proposed Amended Complaint which the Court found lacking in the discussion above and below, the Court finds that the allegations concerning the November 2001 representations are specific; made with abundant citations of knowledge by Hanway and/or Stewart that they were making false statements to the public as compared to what they themselves knew from internal CIGNA memoranda which they either wrote or received; and material because they cast significant doubt on CIGNA's ability to meet the Transformation schedule benchmark of January 1, 2002, as had been previously represented to the public.

The Court will therefore allow the amendment of the Pending Complaint to add Paragraphs 175 through 181 of the Proposed Amended Complaint, because these Paragraphs contain specific allegations showing scienter, that statements made to the public and the analysts about the Transformation project shortly before the beginning of calendar year 2002 failed to disclose the Defendants' actual knowledge that significant problems existed.  Plaintiff is entitled

to attempt to prove that if the true facts had been disclosed, this might have made a difference in

CIGNA's shareholders' knowledge and appreciation of the company's prospects/problems for

the year 2002.  The Proposed Amended Complaint specifically alleges that the delays, which

CIGNA had known about since the spring of 2001, had continued to occur "with the result that it

was impossible for CIGNA to deliver properly functioning systems to customers and the

company planned to migrate to the new system on January 1, 2002 . . ."  See Proposed Paragraph

179.  Moreover, Proposed Paragraph 180 quotes an internal audit report for May-August 2001,

delivered to CIGNA's audit committee, which states:

> Processes around the management of a sales and underwriting
> system development project continue to need substantial
> improvement because of inadequate design and architecture to
> insure required functionality.

Although the Court does not necessarily know whether these are the determinative documents

within CIGNA, or that they necessarily contain the entire picture of CIGNA's progress with its

Transformation project, given that this case has from the start been primarily about alleged

misrepresentations which CIGNA made about the Transformation project, the Court finds that

the amendments in Paragraphs 175-181 of the Proposed Amended Complaint concerning

disclosures as of November 2001 (1) do not dramatically change the nature of the case; (2) will

not be unduly burdensome or prejudicial on CIGNA, and (3) will allow Plaintiff an opportunity

to show that the actionable allegations which, under Judge Newcomer's present ruling, begin as

of February 2002, did in fact germinate at an earlier time, in November of 2001.

### b.  Claims that Defendants Misrepresented Costs and Earnings

The second aspect of the Proposed Amended Complaint involving the November 2, 2001,

conference call deals with comments by Stewart about the amount of additional spending that the Transformation project would require.  Specifically, in response to a question, Stewart stated "we expect to spend like $75 million more in 2001 than it did in 2000." (¶ 182).  Plaintiff alleges that this was a false number because the actual increase in Transformation spending in 2001 was more than $150 million.  In addition, Plaintiff alleges that Stewart misrepresented CIGNA's operating earnings for its indemnity segment as $396 million, whereas, in fact, the correct estimate as of the third quarter 2001 was $320 million, or $76 million less than Stewart's allegedly false representation.

The Court will decline to allow the amendments in Paragraphs 182-184 of the Proposed Amended Complaint alleging false representations as to costs and/or earnings, for several separate reasons:

1.      Because Stewart obviously was speaking before the end of 2001 but was predicting financial results for the entire year of 2001, his statements were, by definition, forward-looking and not actionable under the PSLRA, without scienter.

2.      These paragraphs do not cite any facts that Stewart had actual knowledge of specific facts to show scienter, i.e., that he knew his statement was false at the time he made it.

3.      Any reasonable listener/reader of his statements would conclude that they were merely expectations (i.e., estimates and not specific representations of actual numbers) – indeed, no one could have had actual knowledge because the year was not yet completed.

The Court also concludes, notwithstanding that some securities fraud cases are brought, and indeed settled for large sums of money, based on allegedly false estimates, that the PSLRA and the case law within the Third Circuit requires district courts to examine securities claims

-22-

based on costs and earnings estimates with great scrutiny, see, e.g., In re Advanta, 180 F.3d at

535-36; In re Burlington Coat Factory, 114 F.3d at 1430-36; Weiner v. Quaker Oats Co., 129

F.3d at 320-21, and that the allegations in the Proposed Amended Complaint are not sufficient to

overcome the statutory and Third Circuit-endorsed protections for forward-looking statements.

Finally, and repeating what the Court stated above concerning other allegations of

improper estimates, the Court finds that allowing the Proposed Amended Complaint to move

beyond misrepresentations about the status of Transformation and into CIGNA's estimates of

earnings would, in essence, present a new case, require vast amounts of additional and different

discovery from what has previously been contemplated, delay the trial and resolution of the case,

and would be unduly prejudicial to CIGNA.

### 4.   Alleged Misrepresentations on February 8, 2002

Beginning at Paragraph 187, Plaintiff suggests amendments based upon

misrepresentations allegedly made on February 8, 2002, when CIGNA issued a press release

announcing its 2001 fourth quarter and year-end financial results.  The Court finds that the

proposed amended Paragraphs 188-190, 199, and 201 primarily concern operational matters and

will be allowed.  However, Paragraphs 192 through 197, and 202, concern estimates of earnings

and/or costs, and will not be allowed for the reasons stated previously in this Memorandum.

### 5.   Alleged Misrepresentations on May 2, 2002

Judge Newcomer dismissed Paragraph 201 of the Pending Complaint, concerning a press

release made on May 2, 2002, announcing the financial results for the first quarter of 2002 and

statements made at a press conference on that same date.  In the Proposed Amended Complaint,

Plaintiff seeks to assert in Paragraphs 204-213 that on May 2, 2002, CIGNA knowingly

misrepresented its estimates of earnings for the full year of 2002.

Although, as stated supra, the Court will not allow amendment of the Pending Complaint to allow Plaintiff to seek liability for incorrect estimates of earnings and/or costs, in that they are inherently forward-looking and the evidence of scienter is lacking, the Court will allow the amendments set forth in Paragraphs 208-213 of the Proposed Amended Complaint, because these claims primarily involve operational problems and membership growth.  The Court finds that these allegations are merely refinements of existing claims that add details to the case that is now pending, and that there is little extra burden placed on CIGNA for the extension of currently-existing claims.

#### 6.      Alleged Misrepresentations on August 2, 2002

Beginning at Paragraph 214, Plaintiff seeks to make amendments for allegedly false statements made on August 2, 2002, announcing financial results for the second quarter of 2002. The Court will not allow the proposed Paragraphs 216-218 because they concern forward-looking statements and there is an absence of sufficient evidence as to scienter.

#### 7.      Alleged Misrepresentations on September 3, 2002

Beginning at Paragraph 219, Plaintiff asserts misrepresentations in a press release issued on September 3, 2002, concerning an after-tax charge of $720 million to create reserves for reinsurance contracts.  The Court finds that this is a restatement of allegations made in the Pending Complaint; does not propose a new theory of liability based on forward-looking statements; and, thus, will be allowed.

#### 8.      Alleged Misrepresentations on or after October 24, 2002

Plaintiff's proposed amendments for acts and omissions taking place after October 24,

2002 – beginning at Paragraph 221 – merely provide further details and expansion of factual allegations for the events that were pleaded in the Pending Complaint, and will therefore be allowed.  Some of these allegations concern events that took place in 2003, after the end of the damage period, and may be evidentiary in nature.

*   *   *

In all the rulings made above, the Court is not necessarily determining that any specific piece of evidence is either admissible or not admissible in the presentation of dispositive motions or at trial.  Rather, the intent has been to be consistent with the PSLRA and Third Circuit law on amendments of complicated securities cases after three years of litigation; to adhere to Judge Newcomer's stewardship of this case during the first three years; and to keep in mind the desirable public policy of not unduly delaying the completion of complex litigation.

## V.   Economic Loss and Loss Causation Issues

As noted above, Defendants have moved to dismiss paragraphs 247 through 250 for failure to adequately allege economic loss and loss causation, relying heavily on Dura Pharmaceuticals, supra.  The parties submitted supplemental briefs after discussion on this point during the oral argument held on November 16, 2005.

Defendants acknowledge that, comparing specific trades by SERS, there are some instances in which SERS sold some shares at prices lower than the price at which it bought the same shares.  Defendants contend, however, that on an overall basis – i.e., for all transactions during the class period – SERS did not have a net loss in its trading in CIGNA stock, and thus, under Dura Pharmaceuticals, SERS cannot plead any economic loss or loss causation.

The Court concludes at this time as follows:

1.      There are substantial issues of fact raised by the parties.  Both sides' briefs on this issue assert that statements made by the other party are false and inaccurate, and the Court cannot resolve these issues without a trial or at least an evidentiary hearing of some type (although it is possible that these factual disputes will disappear once there has been more full discovery and the issues can be presented in a dispositive motion).

2.      Defendants' argument can be illustrated by the following simplified hypothetical, which may not necessarily apply to the facts of this case.  See Figure 1.

---

Figure 1.
Hypothetical Lead Class Plaintiff X Purchases of ABC Corp. Common Stock

| | | | | | |
|---|---|---|---|---|---|
| 1. | 1/1 | Buy | 1000 | at $10 | |
| 2. | 1/15 | Sell | 100 | at $15 | + $500 |
| 3. | 1/30 | Sell | 100 | at $5 | - $500 |
| | 2/15 | False public statement, stock goes up  [beginning of alleged damage period] | | | |
| 4. | 2/20 | Sell | 200 | at $25 | + $3,000 |
| 5. | 2/22 | Sell | 200 | at $30 | + $4,000 |
| | 2/24 | Truth revealed, stock goes down | | | |
| 6. | 2/25 | Sell | 100 | at $5 | - $500 |
| | 2/25 | Hold | 300 | at $5  [end of alleged damage period] | |

Total Gain for Class Damage Period = $7,000
Total Loss for Class Damage Period  = $500
Net Gain for Class Damage Period = $6,500

---

The intent of the PSLRA is to require a lead plaintiff to have real economic loss, and Defendants assert as a matter of common sense and realistic economic impact that the Court must look at the Lead Plaintiff's overall economic standing as of the end of the class period, rather than at only particular, isolated individual transactions that occurred during the class period.

3.      Although Dura Pharmaceuticals contains language that supports the Defendants'

interpretation of the requirement of economic loss in the PSLRA, the Defendants' legal position as applied to the facts of this case may require an extension of <u>Dura Pharmaceuticals</u> that is not required by either Supreme Court or Third Circuit precedent at the moment (although there are several district court cases discussing this issue).

The Court concludes that, because the issues of economic loss and loss causation are so fundamental to the situation of SERS as the present Lead Plaintiff, the Court should require expedited discovery, and possibly expert reports, on this issue – after which, either or both parties may bring a dispositive motion.  At this time, therefore, the Court will deny Defendants' Motion to Dismiss on the grounds of economic loss and loss causation without prejudice.

## VI.    Conclusion

In accordance with the foregoing discussion, the Plaintiff's Motion to Amend will be granted in part and denied in part.  The Defendants' Motion to Dismiss will be denied without prejudice.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: CIGNA CORP | : | CIVIL ACTION |
| SECURITIES  LITIGATION | : | NO. 02-8088 |
| | : | |

**<u>ORDER</u>**

AND NOW, this 23rd   day of December, 2005, after careful review of arguments

presented to the Court by both parties during oral argument and in numerous, detailed pleadings,

it is hereby ORDERED as follows:

1.      Plaintiff's Motion to Amend (Docket No. 86) is GRANTED in part and DENIED

in part, in accordance with the accompanying Memorandum.

2.      Defendants' Motion to Dismiss (Docket No. 82), as to paragraphs 247 through

250 of the Proposed Amended Complaint, is DENIED without prejudice.  The Court will require

expedited discovery and the opportunity for dispositive motions on economic loss and loss

causation issues.

3.      Plaintiff shall file an Amended Complaint, in accordance with the accompanying

Memorandum, by January 9, 2006.

4.      The parties shall discuss and submit either a joint or separate proposed Pretrial

Scheduling Order to the Court by December 28, 2005 at 12:00 p.m., and, as per the Court's prior

agreement with counsel, the Court shall hold a telephone conference with counsel on December

28, 2005 at 4:00 p.m.

BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL\02-8088 Kaminski v CIGNA Corp\In re CIGNA Mem & Order re Mot to Amend and Mot to Dismiss.wpd