IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------ x
:
IN RE CIGNA CORPORATION :
SECURITIES LITIGATION : Master File No. 2:02CV8088
:
------------------------------------------------------------------ x

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF FINAL APPROVAL OF SETTLEMENT**

Defendant CIGNA Corporation and the individual defendants, H. Edward Hanway and James G. Stewart, respectfully submit this memorandum of law in support of the parties' application pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for final approval of the proposed settlement of the above-captioned class action, as provided in the Stipulation and Agreement of Settlement, dated January 24, 2007 (as amended by the Stipulation and Order to Amend Stipulation and Agreement of Settlement, filed April 18, 2007), and for entry of the proposed Final Judgment of Dismissal with Prejudice.

After strenuous litigation and extensive mediation, defendants agreed to the proposed class settlement providing a $93 million cash fund for the release and discharge of the securities claims against them. This settlement resolves an action that began in October 2002 and has had a long and complicated procedural history and factual background. The Court's task at this juncture is to determine whether, in the light of various factors enumerated in earlier cases, the settlement is fair, reasonable and adequate. On all counts, it clearly is.

I.     BACKGROUND

    A.     <u>The Original Complaints</u>

In September and October 2002, new information became available to CIGNA executives that suggested that the company would not meet its prior projections for third quarter and full-year 2002 earnings. CIGNA accelerated its third quarter earnings announcement and issued a press release on October 24, 2002 to alert investors of the recently discovered adverse developments. The seven original complaints in this action were filed beginning on October 25, 2002, after CIGNA's stock price dropped following the announcement of revised earnings expectations. The complaints alleged claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.*

The core claims in all of the original complaints focused on CIGNA's alleged failure to reserve adequately for its discontinued reinsurance operations. Over time, those claims were withdrawn or dismissed and, after a series of amendments, the remaining claims in this action relate to allegations concerning CIGNA's multi-year computer Transformation project for its HealthCare division.

    B.     <u>Defendants</u>

Headquartered in Philadelphia, CIGNA is a leading provider of employee benefits, including health care coverage as well as group life, accident and disability insurance. Mr. Hanway is CIGNA's current Chairman and Chief Executive Officer and has served in those positions since 2000. Mr. Stewart was Executive Vice President and Chief Financial Officer at

the time of his retirement on October 31, 2002, after a thirty-six year long distinguished career at CIGNA.[1]

### C. Lead Plaintiffs and Class Certification

On May 15, 2003, the Court appointed the Pennsylvania State Employees' Retirement System ("SERS") and Peter Szanto to serve as Co-Lead Plaintiffs. On August 15, 2005, Mr. Szanto was granted leave to withdraw from the case. On February 21, 2006, in anticipation of defendants' motion for summary judgment relating to SERS,[2] the Public Employees' Retirement System of Mississippi ("MPERS") and City of Miami General Employees' and Sanitation Employees' Retirement Trust ("Miami Employees") moved to intervene and to serve as additional proposed class representatives. On March 23, 2006, the Court granted the motion to intervene. On August 18, 2006, the Court certified a class of all persons who purchased CIGNA common stock between November 2, 2001 and October 24, 2002 and who suffered damages, and certified MPERS and Miami Employees as class representatives. Although SERS was not a class representative, the Court allowed it to remain as Lead Plaintiff.

### D. The History Of The Amended Complaint

On July 3, 2003, the Co-Lead Plaintiffs filed a consolidated amended class action complaint, which defendants moved to dismiss. In an Order dated January 30, 2004, the Court

---

[1] James A. Sears, former Chief Accounting Officer, and Andrea Anania, former Executive Vice President and Chief Information Officer, were also named defendants. On November 15, 2004, the Court granted defendants' motion to strike from the then existing consolidated class action complaint all allegations related to Ms. Anania. Plaintiffs voluntarily dismissed all claims against Mr. Sears on July 18, 2006.

[2] The motion was based on SERS's trading records and testimony about its trading, which showed that it was overwhelmingly a net-seller of CIGNA stock during the class period, had not suffered any losses as a result of the alleged fraud, and would have actually profited from any alleged price inflation. The Court denied defendants' motion without prejudice on August 18, 2006.

dismissed all claims in that complaint that were not related to alleged issues regarding Transformation.

Following discovery, SERS moved to amend that complaint. In an Opinion and Order dated December 23, 2005, the Court rejected most of the proposed amendments, including new claims challenging CIGNA's earnings projections. The Court observed that many of the claims were a "jumbled stream of alleged facts that appear to 'cherry pick' from CIGNA documents." *See* December 23, 2005 Order at 15. SERS filed a revised amended complaint, including claims specifically disallowed by the Court, and upon defendants' motion, the Court dismissed the claims that it had previously disallowed, along with all allegations that CIGNA's financial statements were "false and misleading" and that CIGNA committed unspecified accounting violations. *See* March 24, 2006 Order at 2-8. On March 30, 2006, SERS filed a Second Revised Consolidated Amended Class Action Complaint ("Complaint").

### E.     Fact Discovery And Expert Reports And Discovery

Discovery began in March 2005 and was completed by August 18, 2006. Defendants produced over one million pages of documents, including all relevant business and financial reports and documents, including emails, from the files of CIGNA's senior executives and the executives responsible for Transformation in 2001 and 2002. Plaintiffs deposed twenty-nine fact witnesses, including current and former CIGNA executives and third parties such as CIGNA's customers, brokers and a securities analyst. CIGNA deposed twenty fact witnesses, including plaintiffs' personnel and third-party witnesses.

On August 21, 2006, plaintiffs served four expert reports and, on September 21, 2006, defendants served two expert reports.[3] Both parties conducted depositions of those experts. The settlement was reached before rebuttal expert reports were served.

F.  **Defendants' Summary Judgment Motion**

On August 31, 2006, the defendants filed a comprehensive motion for summary judgment. Defendants sought dismissal of the entire Complaint on the grounds that the record indisputably refuted any material misrepresentation, fraudulent scienter and loss causation. Plaintiffs opposed the motion. The settlement in this case was reached before the Court decided defendants' summary judgment motion.

G.  **Anticipated Trial Date**

The case was to be scheduled for trial on a date after March 1, 2007. The settlement in this case was reached before trial and before notice was given to the class members that the case had been certified as a class action.

H.  **Mediation And Settlement**

On November 14 and 15, 2006, the parties participated in mediation sessions before the Honorable Layn R. Phillips. The mediation provided counsel for the parties with valuable insights into the merits of their respective positions. The mediator continued to communicate with counsel for the parties thereafter. On December 7, 2006, the parties entered into a Memorandum of Understanding concerning the material terms of a settlement of the action. The

---

[3] Both parties submitted expert reports on plaintiffs' alleged damages and loss causation and on Transformation technology. Additionally, plaintiffs submitted reports concerning (1) service metrics followed by health insurance companies and related performance guarantees and (2) one individual's view of the group health benefits industry and of Transformation. Earlier, defendants served two expert reports and SERS submitted one expert report with respect to defendants' motion for summary judgment as to SERS referred to in footnote 2.

parties filed the Stipulation and Agreement of Settlement on January 24, 2007, and the Preliminary Approval Order was entered by the Court on that date.

## II. THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS FAIR, REASONABLE AND ADEQUATE

### A. Settlements Are Favored By The Courts

It is long established that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The courts have recognized that "parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

The Federal Rules of Civil Procedure require judicial approval of a class action settlement. Rule 23(e)(1)(A) provides, in pertinent part, that the "court must approve any settlement . . . of the claims, issues, or defenses of a certified class." Approval of a proposed settlement in a class action is within the sound discretion of the court. *Eichenholtz v. Brennan*, 52 F.3d 478, 488 (3d Cir. 1995). The court's role is limited to approval or disapproval of the settlement agreement. *Davies v. Continental Bank*, 122 F.R.D. 475, 478 (E.D. Pa. 1988).

A class action settlement should be approved when it is "fair, adequate, and reasonable" to the members of the class. *Eichenholtz,* 52 F.3d at 482. *See also* Fed. R. Civ. P. 23(e)(1)(C) ("The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate.") In evaluating a settlement, the court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted).

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Court of Appeals set forth a number of factors which a court should consider when evaluating the fairness of a proposed settlement in a class action. They are:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the proposed settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 231-32 (3d Cir. 2001) (applying *Girsh* nine-factor test).

In addition to the foregoing factors, courts also refer to the professional judgment of counsel involved in the litigation. *See In re General Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."); *Davies*, 122 F.R.D. at 479 ("In class action settlements, as with other settlements, the parties and counsel are typically in the best position to evaluate the settlement; their judgments are entitled to considerable weight."). A

7

proposed class action settlement is presumptively valid where the parties engaged in arm's length negotiations after meaningful discovery. *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 491 (E.D. Pa. 2003). *See also In re PNC Financial Services Group, Inc.*, 440 F. Supp. 2d 421, 430 (W.D. Pa. 2006) ("[A] presumption of fairness attaches to a proposed settlement where (1) the settlement negotiations occurred at arms' length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objects.").

With these factors in mind, and for the reasons set forth below, the proposed settlement should be approved as fair, reasonable and adequate.

### B. The Complexity, Expense and Likely Duration of the Litigation Commend Approval of the Settlement

There is no question that the first *Girsh* factor is satisfied. This case raises many complex factual and legal issues. The core subject matter, the details and progress of CIGNA HealthCare's massive Transformation project, would be difficult to present to a jury. In addition, the jury would have to be educated about a public company's disclosure obligations and would have to evaluate competing assessments of damages. CIGNA was prepared to advance compelling defenses relating to misrepresentation, causation and scienter. Each side faced significant hurdles in presenting the complicated issues to a jury.

Even though the case was scheduled to go to trial within three months of the time it was settled, a tremendous amount of work remained to prepare it for trial. Although defendants' summary judgment motion was fully briefed, dismissal of any aspect of plaintiffs' case pursuant to Rule 56 would have required refocusing the case to be tried, including obtaining revised damages estimates. The parties would have filed motions *in limine* and *Daubert* motions, requiring extensive briefing. All of the other pretrial filings had to be prepared. A trial would

8

have lasted for weeks. And, more importantly, post-trial motions and appeals would have been filed by the parties that did not prevail at trial. Those appeals would have delayed final resolution for a prolonged period and might have resulted in no recovery for the class. Each stage would have required the investment of tremendous resources, time and money by the parties.

Just as CIGNA had to weigh the uncertainty of the outcome of a trial, so also did the plaintiffs. Even after a long and arduous path to any final judgment, plaintiffs risked either no recovery or a far lesser recovery than their damage theory might suggest. Plaintiffs' choice to accept a settlement of $93 million now, rather than taking their chances on a possibly larger, but by no means certain, recovery two or more years from now was entirely rational. *See In re General Instrument*, 209 F. Supp. 2d at 429 ("[T]his case is complex, and the trial would have been a lengthy, costly affair; as well, the parties have indicated that an appeal would likely follow. . . . In settling the case, the class members receive immediate benefits without having to endure protracted litigation, which they may not win.").

### C. The Reaction Of The Class Is Favorable

No objections have been filed and only one request for exclusion has been received. Thus, it can fairly be said that the reaction of the class is overwhelmingly in favor of the settlement. *See In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003) ("[N]ot one objection to the merits of the settlement was filed. . . . This factor thus tips very heavily in favor of the strong presumption of fairness."), *vacated in part on other grounds*, 396 F.3d 294 (3d Cir. 2005); *In re Cell Pathways, Inc. Sec. Litig. II,* No. 01-CV-1189, 2002 WL 31528573, at *4-*5 (E.D. Pa. Sept. 23, 2002) ("Not one class member has objected to the terms of the settlement. . . . Here, the reaction of the class weighs in favor of approval."); *In re*

9

*General Instrument,* 209 F. Supp. 2d at 429 ("[T]o date, there has not been a single objector. This barometer of the reaction of the class provides strong circumstantial evidence in favor of the settlement.").

The parties were notified of a potential objection by Fiduciary Counselors, Inc., an independent fiduciary retained to advise the CIGNA 401(k) Plan and the Intracorp 401(k) Performance Sharing Plan (the "Plans") regarding the settlement. That objection was resolved when the parties agreed to amend the definition of "Settled Claims" in the Stipulation and Agreement of Settlement. *See* Stipulation and Order to Amend Stipulation and Agreement of Settlement, filed April 18, 2007. The effect of the amendment is to preserve claims (if any exist following the settlement in *In re CIGNA Corp. ERISA Litigation*, E.D. Pa. Master File: 03-CV-714) that potentially could be brought under ERISA on behalf of the Plans or participants in the Plans. This amendment has no effect on most class members and has a beneficial effect for those members of the class in this action who could conceivably have an ERISA claim that is not barred by the earlier ERISA settlement.

### D. Stage Of The Proceedings And Discovery

The proceedings in this action were at an advanced stage when they were stayed for the mediation. As noted above, the settlement was reached three months before trial was to be scheduled. At the time of settlement, the parties had engaged in more than a year of extensive discovery. Over one million pages of documents were produced by CIGNA alone and forty-nine fact witnesses were deposed. Numerous discovery motions were filed and argued, while other discovery disputes were resolved through lengthy meet and confer sessions. The discovery proceedings allowed each side to gain more information about the other side's positions. The parties provided voluminous factual contentions and identified documents to support them.

Defendants filed a motion for summary judgment as to SERS, arguing that because SERS was a net seller of CIGNA stock during the class period, it could not establish economic loss. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (stating that the PSLRA "expressly imposes on plaintiffs 'the burden of proving' that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). The Court denied that motion without prejudice, indicating that the issues should be raised at trial. Later, defendants filed a motion for summary judgment seeking dismissal of all claims. That motion was fully briefed when the settlement was reached.

Experts were retained and consulted, and all but one of the experts were deposed. In addition, participation in mediation sessions with the Honorable Layn R. Phillips provided counsel with valuable insights into the merits of their respective positions. Thus, the plaintiffs were able to make an informed decision about the wisdom of entering into the proposed settlement. The third *Girsh* factor is satisfied. *See In re Corel Corp.*, 293 F. Supp. 2d at 491-92 ("[T]his settlement was reached at a stage when the litigation was significantly advanced so that all parties were fully informed of the strengths and weaknesses of their positions.").

E.   **The Risks Of Establishing Liability And Damages**

Plaintiffs faced great challenges in establishing liability and proving damages. As noted above, the subject matter of the action, CIGNA's Transformation project, is immensely complex. Defendants maintained throughout the litigation that any technology project of such scope and duration would inevitably involve problems, delay, and, at times, concern among those involved with implementing it.

Plaintiffs' case was built on isolating documents (some taken out of chronological sequence), or portions of documents, that identified various problems. In their quest to establish

11

liability, they paired those documents with portions of statements, again taken out of context, made by CIGNA's executives in quarterly calls with analysts, and, in one instance, a portion of a statement made in CIGNA's Form 10-K for 2001. At the same time, plaintiffs ignored the full text and context of the statements upon which they premised liability, as well as information publicly disclosed in the market by analysts and reporters. *See In re PNC*, 440 F. Supp. 2d at 434-35 ("Establishing materiality in any securities claim involves a complex undertaking of fact and law. . . . In short each area of contention presents an appreciable degree of risk in plaintiffs' ability to establish a recovery.").

The parties disagreed strenuously about the nature and meaning of the public statements on which plaintiffs' case is constructed as well as the extent to which CIGNA was required to disclose ordinary management issues. Moreover, as plaintiffs concede, establishing scienter in the face of no insider trading or other indicia from which a jury could infer scienter, was a difficult, if not insurmountable, challenge. *See In re Cell Pathways*, 2002 WL 31528573, at *6 ("[S]cienter in a securities litigation case is usually proven by circumstantial evidence, such as a showing that the defendants engaged in insider trading. In this case, there was no insider trading, making it harder to prove that the defendants had the requisite scienter.").

Further, plaintiffs had no independent witnesses through whom they could elicit facts, but were dependant on the testimony of CIGNA's current and former employees. As a result, they would have been required to prove their case through hostile witnesses or the testimony of experts. *See In re Corel Corp.*, 293 F. Supp. 2d at 492 (burden of proving scienter "exacerbated by the fact that plaintiffs would have had to establish their case almost exclusively through documents and the testimony of hostile witnesses").

In addition to attempting to prove liability based on snippets of public statements, plaintiffs faced the hurdle of linking the public statements made in November 2001, February 2002, and May 2002 to the announcement CIGNA made on October 24, 2002. *See Dura*, 544 U.S. at 345-46. Defendants argued throughout the course of the litigation that CIGNA's announcement that it would not meet its projected earnings was due to factors that had nothing to do with plaintiffs' claims. In an exhaustive report, defendants' expert on damages, Dr. Bruce E. Stangle, laid out in great detail why the drop in CIGNA's stock price following the October 24, 2002 announcement was not causally related to the statements that plaintiffs reply upon; and he described the factors that actually caused the drop in the stock price.

Lastly, had plaintiffs surmounted the materiality, causation and scienter hurdles, they would have faced an additional challenge of proving damages. The quantification of damages in a case like this is complex and highly technical, and one which is certainly subject to attack by the opposing expert. *See In re Corel Corp.*, 293 F. Supp. 2d at 492 ("The conflicting damage theories of defendants and plaintiffs would likely have resulted in an expensive battle of the experts and it is impossible to predict how a jury would have responded."); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000) ("On both the causation and the estimate of damages, the parties would have to submit expert testimony. Regardless of the strength of plaintiffs' position, a jury might reject their expert witnesses. . . . The settlement avoids this uncertainty.").

Against the background of the complicated factual and legal issues which presented substantial risks to both sides, the settlement that was achieved is a great benefit to the class.

### F.     Risk Of Decertification

The sixth *Girsh* factor to be considered in approving a settlement of a class action is "the risk of maintaining the class action through trial." Decertification is always a possibility given the conditional nature of all class action certifications. *In re Ikon*, 194 F.R.D. at 181. Here, had any aspect of defendants' motion for summary judgment been granted, the class definition might have been altered. For instance, had the Court determined that the claim regarding defendants' November 2, 2001 statement should be dismissed, the class period would have been shortened and the scope of the class diminished. As a result, the estimate of potential damages would have been reduced by a significant amount. Other pretrial rulings by the Court could have affected the class definition. Thus, the evaluation of this factor also weights in favor of approval of the settlement.

### G.     The Settlement Is Within The Range Of Reasonableness

The three other factors set forth in *Girsh* which the Court may evaluate in assessing the fairness of a settlement relate to the reasonableness of the amount of the settlement, taking into consideration the defendants' ability to withstand a judgment greater than the settlement; the range of reasonableness of the settlement fund in light of the potential recovery; and the range of reasonableness of the fund in light of all the risks of litigation. "The court must review a settlement to determine whether it falls within a 'range of reasonableness,' not whether it is the most favorable possible result of litigation." *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986) (citation omitted). To attempt to establish as a matter of certainty the value of a claim would defeat the purpose of concluding a case by settlement rather than trial. *Id.  See also In re PNC*, 440 F. Supp. 2d at 435 (evaluation of the range of reasonableness must be

"undertaken with the recognition 'that the settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution'").

To a large degree, the discussion above addresses the last two *Girsh* factors. Because establishing liability would be difficult under the securities law claims, plaintiffs faced a substantial risk of not prevailing on the merits. Moreover, if the case were to go to trial, it would be unlikely that the litigation would end at the conclusion of the trial. Post-trial motions and appeals could extend the duration of the litigation for well over an additional year. At each stage, the outcome would be uncertain and any potential recovery to the class members would be postponed.

In light of the risks of establishing liability and damages at trial, the $93 million cash settlement constitutes a substantial recovery and falls within the range of reasonableness. *See In re PNC*, 440 F. Supp. 2d at 436 ($36.6 million cash recovery in partial settlement was "well within the range of reasonableness when contrasted with the best possible recovery and the risks attendant with proceeding to trial"); *In re General Instrument*, 209 F. Supp. 2d at 431 (in light of "difficulties that plaintiffs would face at trial with respect to proving liability and damages," proposed cash settlement of $48 million was "within the range of reasonableness").

## III.   CONCLUSION

Plaintiffs and defendants and their counsel, having considered the facts and circumstances underlying the claims asserted, the complexity of the issues, the discovery conducted, the risks and costs of further litigation and the relative strengths and weaknesses of the claims, have concluded that settlement of this case is in the best interests of the class claimants and of CIGNA and the individual defendants. The certainty of settlement at this time

is a great advantage over the unknowns of prolonged, expensive and difficult litigation which would otherwise have to be pursued.

Under all applicable standards, the settlement is fair, reasonable and adequate. For the foregoing reasons, CIGNA and the individual defendants respectfully ask that this Court approve the proposed settlement.

Respectfully submitted,

    s/Eleanor Morris Illoway
John G. Harkins, Jr. (04441)
Eleanor Morris Illoway (40632)
Karin E. Davis (55983)
HARKINS CUNNINGHAM LLP
2800 One Commerce Square
2005 Market Street
Philadelphia, PA  19103-7042
(215) 851-6700

and

Alexander R. Sussman
Sarah R. Krissoff
Ariel I. Raphael
FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP
One New York Plaza
New York, NY  10004-1980
(212) 859-8000

Dated:  April 18, 2007

## CERTIFICATE OF SERVICE

I, Karin E. Davis, hereby certify that on this 18th day of April, 2007, I caused to be served true and correct copies of Defendants' Memorandum of Law in Support of Final Approval of Settlement on the parties listed below by the following means. I further certify that Defendants' Memorandum has been electronically filed and is available for viewing and downloading from the ECF system.

**By Hand Delivery and Email**

Sherrie R. Savett, Esquire
Carole A. Broderick, Esquire
Barbara Podell, Esquire
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103

**By Federal Express and Email**

Francis P. Karam, Esquire
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street, 22nd Floor
New York, NY 10016

Darnley D. Stewart, Esquire
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019

Robert I. Harwood, Esquire
Daniella Quitt, Esquire
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, NY 10022

                                                s/Karin E. Davis