## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: CIGNA CORP. SECURITIES | : | CIVIL ACTION |
| LITIGATION | : | |
| | : | NO. 02-8088 |

## MEMORANDUM

**Baylson, J.**                                                                                        **July 13, 2007**

### I.  Introduction

In this federal securities litigation, after a hearing on April 27, 2007, the Court granted

final approval of the settlement on behalf of a class in the amount of $93,000,000 (Doc. No.

282).  Currently before the Court is a Motion by Lead Plaintiff, Pennsylvania State Employees

Retirement System ("SERS"), for an Award of Attorneys' Fees and Expenses and

Reimbursement of Reasonable Costs and Expenses to Plaintiffs (Doc. No. 273).

Class counsel, as Lead Plaintiff, seek an award of counsel fees of $21,390,000 plus

interest, representing 23% of the settlement, and reimbursement of expenses in the amount of

$1,390,976.42, plus interest, which were incurred in connection with this litigation.

Lead Plaintiff has supported its Motion with extensive affidavits of the attorneys who

worked on this case and supporting experts.  For the reasons set forth below, the Court will grant

the Motion for an Award of Attorney Fees and Expenses for class counsel and also explain the

reasons for approving the class settlement.

In addition, the Court, having previously approved the related settlement of derivative

actions, will allow an award of attorneys' fees in those actions (Doc. No. 276).

### II.  Background

The background of these cases has been set forth in prior Memoranda.  In summary, Lead

Plaintiff, a Commonwealth of Pennsylvania agency, alleged that Defendant CIGNA and two high-level corporate officers committed fraud, and were liable under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq., ("PSLRA"), for deceptive and untrue public announcements.

The original Complaint alleged liability on two grounds, one relating to misstatements about CIGNA's Transformation project (to upgrade its computer systems), and the second dealing with allegedly excessive earnings estimates. Overall, Plaintiffs asserted that the absence of appropriate public statements by Defendants led to an artificial inflation of CIGNA's stock price. CIGNA's announcement on October 24, 2002 concerning reduced earning expectations (which it partially blamed on its difficulties with Transformation) resulted in a 45% share price drop (from $63.60 to $34.70), which became the focus of the class's damage claims.

Judge Newcomer originally ruled on a Motion to Dismiss, which he denied in part and granted in part (Doc No. 39).[1] On July 29, 2005, Lead Plaintiff SERS filed a Motion for Leave to File an Amended Consolidated Complaint (Doc No. 81), to which the Defendants objected, asserting in part that SERS's claims should be dismissed for lack of adequate pleading of economic loss and loss causation based on a recent U.S. Supreme Court decision, Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005). After oral argument on November 16, 2005, the Court issued an Order dated November 23, 2005 (Doc. No. 117), allowing Lead Plaintiff to amend the pending Complaint to assert allegations under the category of "loss causation."

---

[1] The case was reassigned from Judge Newcomer on his death to the undersigned on September 13, 2005 (Doc. No. 93).

A Memorandum and Order dated December 23, 2005 (Doc. No. 125) allowed SERS to

proceed on its allegations concerning the Transformation project, but dismissed allegations

relating to excessive earnings projections.  See In Re CIGNA Corp. Sec. Litig., 2005 WL

3536212 (E.D. Pa. Dec. 23, 2005).[2]

On February 21, 2006, Lead Plaintiff sought leave to allow two putative class members to

intervene as additional proposed class representatives, in view of CIGNA's arguments that SERS

itself, because of its purchases and sales of CIGNA stock, did not suffer any "net" losses during

the "class period," and therefore may not appropriately serve as a class representative.  The Court

allowed these motions to intervene, believing that SERS could act as lead counsel without

necessarily also being class representative (Doc. No. 180).  See In re CIGNA Corp., 2005 WL

3952802 (E.D. Pa. Feb. 23, 2005).

Class counsel then moved for an order granting class status to the case, which Defendants

opposed, relying on their view of the loss causation issue.  The Court certified the class and

designated Public Employees Retirement Systems Mississippi (NPERS) and Miami General

Employees Sanitation Employees Retirement Trust ("Miami") as class representatives.  See In re

---

[2] Throughout the litigation, there were a number of discovery issues on which the Court held telephone and in-court conferences to resolve.  Plaintiffs and defense counsel were professional, cooperative and well-prepared to argue their respective positions.  Defendants sought to compel discovery of persons believed to have been SERS's "confidential informants" (Doc. 126).  Although the Court concluded that Lead Plaintiff did not have to disclose the identity of which specific persons were "confidential" sources, we required Plaintiff to provide information to identify all individuals known to have knowledge as to each paragraph of the Complaint (Doc. No. 162).  See In re CIGNA Corp., 2006 WL 263631 (E.D. Pa. Jan. 31, 2006). In general, the Court felt that liberal discovery on the Transformation project was consistent with the goals of the PSLRA, as Lead Plaintiff had made substantial and detailed allegations concerning this issue.  Plaintiffs appear to have made the most of the discovery which the Court allowed.

CIGNA Corp., 2006 WL 2433779 (E.D. Pa. Aug. 18, 2006).  Also on that date, after extensive

briefing and oral argument, the Court issued a "Memorandum Regarding Economic Loss,"

reported as In re CIGNA Corp., 459 F.Supp.2d 338 (E.D. Pa. 2006), in which we denied without

prejudice Defendants' Motion for Summary Judgment based on lack of economic loss.

Defendants had argued that under Dura and related cases, a detailed study of Plaintiffs'

transactions showed that Lead Plaintiff did not suffer any overall economic loss because of the

price movements of CIGNA stock during the time periods in which it bought, sold and held

CIGNA stock.  Both parties supported their views with extensive expert reports and extensive

legal briefing.  The Court eventually agreed with Plaintiffs that the Dura Pharmaceutical case on

which Defendants largely relied was directed towards pleadings rather than evidentiary issues at

trial, and that Plaintiffs' right to a jury determination of their damages under the Seventh

Amendment, and significant factual issues as to whether Plaintiffs had suffered economic loss,

warranted denial of Defendants' motion.

Defendants filed another extensive motion for summary judgment on August 31, 2006

(Doc. No. 240), which the Court denied without prejudice when the Court was advised of the

proposed settlement agreement (Doc. No. 259).

III.    **Approval of the Class Settlement**

A district court may only approve a settlement of class action litigation if it is "fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  The Third Circuit has identified nine

factors to guide district courts in approving proposed class action settlements.  See Girsh v.

Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  These factors are: (1) the complexity, expense, and

likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the

proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7)

the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of

the settlement fund to a possible recovery in light of all the attendant risks of litigation.  Girsh,

521 F.2d at 156-57.  The court has further held that a presumption of fairness attaches to

settlement agreements if the district court finds: (1) the negotiations occurred at arm's length; (2)

there was sufficient discovery; (3) the proponents of the settlement are experienced in similar

litigation; and (4) only a small fraction of the class objected.  In re General Motors Corp., 55 F.3d

768, 785 (3d Cir. 1995).

In evaluating the proposed settlement in this case, we note that "there is an overriding

public interest in settling class action litigation, and it should therefore be encouraged."  In re

Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Settlement of complex class

action litigation conserves valuable judicial resources, avoids the expense of formal litigation,

and resolves disputes that otherwise could linger for years.  See id. (citing General Motors, 55

F.3d at 784; In re Sch. Asbestos Litig., 921 F.2d 1330, 1333 (3d Cir. 1990)).

After reviewing the record, the Court finds that the settlement in this case meets the

above standards.  There is no question that this case was complex, would be expensive to bring

to trial, would be followed by extensive appeals, and that the settlement was a cost-efficient

method for both Plaintiffs and Defendants to recognize the benefits of settlement and terminate

the risk of proceeding to trial.  The class has been exceptionally supportive in that no objections

to the settlement were filed.  The settlement was reached after extensive discovery and while

extensive summary judgment motions were pending.  Although Plaintiffs had substantial

evidence supporting their theory of liability, there were serious risks in taking the case to trial.

The case was complex, the Defendants appeared to have reasons for the various actions and

statements that were made, and the case could have depended on a jury's assessment of the

credibility of various witnesses called by both sides.

There were also considerable risks in establishing damages, particularly in view of the

determined and respectable loss causation arguments put forward by Defendants.  Although the

Court concluded the class representatives were qualified under Rule 23 standards, there was

some risk that evidence of the transactions in CIGNA stock as to a particular class representative

on the loss causation issue could undermine the ability to adequately represent other class

members (inasmuch as SERS had been removed as a class representative for this very reason).

Conflicts could have developed between members of the class depending on the dates on which

they bought and sold CIGNA stock, and losses they may or may not have incurred as a result of

price movements during the relevant time periods.  CIGNA is a large, well capitalized

corporation and although it would have the ability to withstand a greater judgment, the Court can

understand why CIGNA wished to define and limit its liability by way of a settlement.  The Court

finds that the settlement amount is a reasonable percentage of a possible recovery given all the

attendant risks of litigation.

Concerning the presumption of fairness, it is clear that negotiations for the settlement

occurred at arm's length, as the parties were assisted by a retired federal district judge who was

privately retained and served as a mediator.  Furthermore, as noted above, there had been

extensive discovery, both class and Defendants' counsel are experienced in this type of litigation,

and there were no objections by any class members.

It is also relevant to note that as this case had proceeded for approximately five years, the

Court would have had to expend considerable time to consider and rule upon the pending

motions for summary judgment, and if denied, the trial would have required extensive

preparation, expense and risk for all parties.

After careful consideration of the risks to the class of proceeding to trial including

possible risks in the class's case, resources expended in this litigation, the lack of objection to the

settlement, and the manner in which the settlement agreement was reached, we concluded that

the decision to settle this case for $93,000,000 is "fair, reasonable, and adequate, " and satisfies

the overall public interest inherent in settling cases of this nature.[3]  Fed. R. Civ. P. 23(e)(1)(C).

## IV.    Attorneys' Fees

### A.    Legal Standard

The PSLRA provides that the attorneys for the class are not to be paid any more than "a

reasonable percentage of the amount of any damages and prejudgment interest actually paid to

the class."  15 U.S.C. § 78u-4(a)(6).  For many years both the Supreme Court and Third Circuit

have favored calculating attorneys' fees as a percentage of the class recovery.  See Boeing Co. v.

Van Gemert, 444 U.S. 472, 478-79 (1980); In re AT&T Corp., 455 F.3d 160, 164 (3d Cir. 2006);

In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions, 148 F.3d 283, 333 (3d Cir.

1998); Court Awarded Attorney Fees, Report of Third Circuit Task Force, 108 F.R.D. 237

---

[3]Even if we were to assume that the seventh Girsh factor – the defendant's ability to withstand a greater judgment – suggests we reject the settlement, this factor alone does not outweigh all the others.  In our view, the remaining Girsh factors overwhelmingly support the approval of the settlement agreement.

(1986).  Generally, the percentage-of-recovery method is "favored in common fund cases

because it allows courts to award fees from the fund 'in a manner that rewards counsel for

success and penalizes it for failures.'"  In re Rite Aid Corp. Sec. Litig, 396 F.3d 294, 300 (3d Cir.

2005) (quoting Prudential, 148 F.3d at 333).  While it is the duty of the court to ensure that the

statute's command is carried out, our Court of Appeals has explained that in a case like this one,

a fee is presumptively reasonable if it has been fixed in an agreement between a properly selected

class representative and properly appointed class counsel.  In re Cendant Corp. Lit., 264 F.3d

201, 282-83 (3d Cir. 2001).  This presumption may be rebutted if the awarded fee is shown to be

(prima facie) "clearly excessive."  Id. at 283; AT&T, 455 F.3d at 167-68.

In this case, Lead Plaintiff SERS has explicitly advised the Court that it approves the

proposed attorneys' fees.  See Declaration of Michael A. Budin, Esq., attached as Exhibit I to

Plaintiffs' Motion (Doc. No. 275).  The fact that the Lead Plaintiff is a public agency of the

Commonwealth of Pennsylvania, and that there have been no objections to the fees, are

important factors this Court must consider.  However, we must also make our own independent

evaluation of the proposed attorneys' fees, "primarily guided" by the factors set forth by the

Third Circuit in Gunter v. Ridgewood Energy Corp., 223 F.3d 190 (3d Cir. 2000).  Cendant, 264

F.3d at 283; see also Rite Aid, 396 F.3d at 302 ("[W]e remind the trial courts to engage in robust

assessments of the fee award reasonableness factors when evaluating a fee request.").

The relevant factors include: (1) the size of the fund created and the number of persons

benefitted; (2) the presence or absence of substantial objections by members of the class to the

settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys

involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the

amount of time devoted to the case of class counsel; and (7) the awards in similar cases.[4]

Gunter, 223 F.3d at 195 n.1.  These factors are not to be applied in a rigid, formulaic manner, but

rather must be weighed in light of the facts and circumstances of each case.  Id.  In certain cases,

one factor may outweigh the others, and in "cases involving extremely large settlement awards,

district courts may give these factors less weight."  Rite Aid, 396 F.3d at 301 (citing Prudential,

148 F.3d at 339; Cendant, 264 F.3d at 283).  Finally, "it is sensible" for the Court to conduct a

lodestar cross-check of its initial fee calculation.[5]  Prudential, 148 F.3d at 333; see also Cendant,

264 F.3d at 284-85 (recommending a lodestar cross-check in order to avoid a potential

"'windfall' to lead counsel").

**B.    Application of the *Gunter* Factors in this Case**

The amount of the settlement in this case is significant and represents one of the largest

securities settlements in this district.  Class counsel estimate that the number of shareholders who

will benefit are in the thousands.  The papers before the Court show that class counsel

disseminated more than 94,000 copies of the notice of settlement to putative class members, and

published a summary notice in the Wall Street Journal and on a "suitable" Internet site.  As noted

---

[4] In Prudential, the Third Circuit "noted three other factors that may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any 'innovative' terms of settlement."  AT&T Corp., 455 F.3d at 165 (citing Prudential, 148 F.3d at 338-340).

[5] Under Third Circuit precedent, we are not required to conduct a lodestar analysis. Rather, the Court of Appeals has explained that we "can consider" a lodestar analysis "if necessary."  Cendant, 264 F.3d at 221, 284-85 (citations omitted).  Nevertheless, we will conduct such an analysis to confirm our conclusion based on the Gunter factors.

above, there were no objections by any members of the class to the settlement terms or the fees

requested by counsel.

The Court is aware of and attests to the skill and efficiency of class counsel:  they have

been diligent in every respect, and their briefs and arguments before the Court were of the highest

quality.  The firm of Berger & Montague took the lead in the Court proceedings; its attorneys

were well prepared, articulate and persuasive.  The Court has already noted the complexity and

duration of the litigation, and although there was little risk of nonpayment in the event there was

a large verdict against the Defendants, the Court has already concluded that both parties had an

interest in arriving at a settlement rather than assuming the risks of litigation.

Although not mandatory, checking the lodestar calculation by class counsel shows a

correlation to the fee requested under the percentage method.[6]  Also, considering the awards in

similar cases, a percentage of 23% in a case of this nature, particularly where class counsel have

been vigorous and assiduous, yet unpaid for over a five-year period, warrants the Court's

---

[6]Class counsel have filed only summary information as to their "regular" billable rates. The Court has expressed its cautionary views in other cases of using unilaterally set hourly rates as an appropriate guide for payment of counsel fees.  In these cases, the Court has required counsel to supply information as to an "average" rate actually paid to the firm, which would reflect competitive forces in the marketplace, as it is well known that many law firms, although promoting what they call their "regular" rate, in fact give many clients discounts and special rates, and also have a collection experience which is less than 100%.  Using an "average rate actually collected" gives a more accurate picture of what a lawyer is actually paid for the lawyer's time.  In addition, although class counsel have submitted their billing rates, it is well known that their firms specialize in class litigation on a contingency basis, and that a significant portion of their clients retain them without an hourly fee agreement.  For these reasons, the hourly rates are of less weight in this case than might otherwise be appropriate, and the suggested cross check of the percentage with the lodestar rate is of dubious value in this type of case. However, the undisputable fact that class counsel spent thousands of hours working on this case against able and aggressive defense counsel protecting the interest of their clients, and reached an outstanding result after having worked on the case without payment for over five years, warrants the fees requested.

conclusion that the requested fee is reasonable.  See, e.g., AT&T, 455 F.3d at 173 (holding that

district court did not abuse its discretion in approving a fee award of 21.25% of a $100 million

settlement fund); Rite Aid, 396 F.3d at 303 (citing three studies which found that fee awards

ranging between 25-31% of the common fund were not unusual); In re Vicuron Pharm. Inc. Sec.

Litig., Civ.A. No. 04-2627, 2007 WL 1575003 (E.D. Pa. May 31, 2007) (approving counsel fees

equal to 25% of $12.75 million settlement); In re Ravisent Tech., Inc. Sec. Litig., No.Civ.A. 00-

1014, 2005 WL 906361, *10-12 (E.D. Pa., Apr. 18, 2005) (approving fee award of 33% of $7

million settlement fund); Rite Aid, 362 F.Supp.2d 587 (E.D. Pa. 2005) (approving attorneys' fees

equal to 25% of a $126 million settlement fund); In re Aetna Inc., No.Civ.A. MDL 1219, 2001

WL 20928, at *13-16 (E.D. Pa. Jan. 4, 2001) (concluding that attorneys' fee award of 30% of the

$82,5000,000 settlement fund was "fair and reasonable").[7]

Furthermore, Plaintiffs and class counsel accomplished this result without any prior

investigation or involvement by an agency of the United States, such as the U.S. Attorney's

Office or the Securities & Exchange Commission, and had to perform all the work, including

detailed investigation and review of documents.  Cf. Prudential, 148 F.3d at 336-38 (remanding

district court's award of attorneys' fees because the court failed to distinguish between benefits

created by class counsel and those created by a multi-state task force of insurance regulators).

Defense counsel were assiduous in the defense of their clients, and there is no reason to believe

that the settlement reached, and the attorneys' fees requested, are unreasonable.

---

[7] The undersigned served as one of the defense counsel in the AETNA Securities
Litigation.

V.      **Derivative Claims**

Two cases, captioned <u>Evelyn Hobbs v. H. Edward Hanway, et al.</u>, Civil Action 02-8371, and <u>Jack Scott v. H. Edward Hanway, et al.</u>, Civil Action 02-9135, were also filed on a derivative basis.  The settlement terms are that the Defendants' insurers will contribute $6,000,000 towards the class action settlement and will also pay counsel fees for the class counsel in these derivative claims.

At the hearing held on April 27, 2007, Robert I. Harwood, Esquire, counsel for the derivative Plaintiffs, advised the Court of the background of the derivative claims, how the settlement of $6,000,000 was reached.  By Order entered May 1, 2007, the Court approved this settlement.

The Court finds that the settlement is reasonable, the allocation of $6,000,000 from Defendants' insurance funds towards the settlement of the class settlement of $93,000,000 is appropriate, and will award counsel fees and costs of $720,000, finding the fees sought by derivative counsel are reasonable in the overall context of this case, once again applying the Third Circuit standards as set forth in the precedential decisions noted above.

Appropriate Orders follow.

BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL\02-8088 Kaminski v CIGNA Corp\Cigna Memorandum Award Attorneys Fees.wpd